AO 91 (Rev. 11/11) Criminal Complaint

C+W No. 13-130

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| United States of America<br>v.<br>ANGELICA PHILIPPOPOULOS<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 13-1405-M |

14cr632-2-ETE

FILED
DEC 12 2013
MICHAEL E. KUNZ, Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 2007 through July 29, 2011__ in the county of __Philadelphia__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371 | Conspiracy to commit bank fraud |
| 18 U.S.C. 1343 | Wire fraud |
| 18 U.S.C. 1344 | Bank fraud |
| 18 U.S.C. 1014 | False statement on loan application |
| 18 U.S.C. 371 | Conspiracy to commit money laundering |
| 18 U.S.C. 2 | Aiding and abetting |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Jennifer Ngo, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/12/2013

_____
Judge's signature

City and state: Philadelphia, PA

Hon. Henry S. Perkin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jennifer Ngo, being first duly sworn, do hereby depose and state as follows:

1. I have been a Special Agent with the Federal Bureau of Investigation for nine years. As part of my duties as a Special Agent with the FBI, I have been trained in the various aspects of law enforcement, including but not limited to, the investigation of banking violations. I have a bachelors degree in accounting from LaSalle University. I am a Certified Public Accountant and a Certified Fraud Examiner.

2. In March 2012, the FBI initiated an investigation into allegations that ANGELICA PHILIPPOPOULOS and GEORGE TRIMIS provided false information to Beneficial Mutual Savings Bank to receive approval for a $12.375 million commercial loan to acquire and renovate the WILSON BUILDING located at 130 Broadway, Camden, New Jersey 08102 (hereinafter, "WILSON BUILDING"). Subsequently, agents from the Inspector General's Offices of the Federal Reserve Board (FRB) and the Federal Deposit Insurance Corporation (FDIC) have been working jointly with me on this investigation. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purposes of obtaining criminal complaints against ANGELICA PHILIPPOPOULOS and GEORGE TRIMIS, I have not included each and every fact known to me concerning this investigation.

3. Based on the facts below, your affiant submits that there is probable cause that ANGELICA PHILIPPOPOULOS and GEORGE TRIMIS have committed violations of 18

U.S.C. §§ 371 (conspiracy), 1014 (false statement in a loan application), 1343 (wire fraud), 1344 (bank fraud) and 371 (conspiracy to commit money laundering):

## BACKGROUND INFORMATION

4. Beneficial Mutual Savings Bank (hereinafter, "Beneficial Bank") is a state chartered financial institution headquartered in Philadelphia, Pennsylvania, the accounts and deposits of which are insured by the Federal Deposit Insurance Corporation (hereinafter, "FDIC"). Beneficial Mutual Bancorp, Inc. is a savings and loan holding company registered as the parent company for Beneficial Mutual Savings Bank. FDIC is the primary federal regulator for Beneficial Mutual Savings Bank and the Board of Governors of the Federal Reserve System is the primary federal regulator for Beneficial Mutual Bancorp, Inc.

5. Wilson Development Associates LLC (Wilson Development) was incorporated in New Jersey during 2008. Based on information obtained from documents and interviews with staff and attorneys of Beneficial Bank, the company is controlled by GEORGE TRIMIS and ANGELICA PHILIPPOPOULOS. Your affiant understands that it is a single purpose entity that was created to acquire the WILSON BUILDING by borrowing from Beneficial Bank.

6. Dysart Ventures, Inc. (Dysart) was incorporated in Delaware in 1997 and New York in 2005. On its website, Dysart described itself as a New York real estate service firm that engaged in domestic and international property acquisition, development and financing. Dysart was the original applicant for the Wilson Building loan at Beneficial Bank, and after the loan was changed to indicate that Wilson Development rather than Dysart was the borrower. Dysart remained the contractor responsible for making the renovations to and handling the day to day management of the Wilson Building. Corporate documents provided to Beneficial Bank list

ANGELICA PHILIPPOPOULOS as the president of Dysart, and GEORGE TRIMIS as the vice president.

7.  Frankel Financial Corporation (Frankel Financial) is a loan broker located at 455 Pennsylvania Ave, Fort Washington, PA 19034. Dennis Burrichter is the employee at Frankel Financial who brokered the loan to Beneficial Bank.

8.  Stephanie Digan was the loan officer at Beneficial Bank that was responsible for the loan to Wilson Development.

9.  Brito & Brito was the accounting firm used by GEORGE TRIMIS to prepare tax returns and financial statements for Dysart and occasionally for ANGELICA PHILIPPOUPOULOS.

*The Loan Application*

10. According to Dennis Burrichter of Frankel Financial, in approximately April 2007, GEORGE TRIMIS and ANGELICA PHILIPPOPOULOS signed an agreement to have loan broker Frankel Financial assist them in securing financing for Dysart's purchase and renovation of the Wilson Building in downtown Camden, New Jersey. Based on his conversations with TRIMIS, as well as documents provided by TRIMIS to Frankel Financial, Dennis Burrichter understood that PHILIPPOPOULOS was the CEO and President of Dysart, and that TRIMIS was the vice president of the company.

11. Dysart applied to Beneficial Bank for the Wilson Building loan. Dysart was the loan applicant on the original paperwork, and PHILIPPOPOULOS, who was allegedly the sole owner of Dysart, was the personal guarantor of the loan. TRIMIS forwarded the documents needed to complete the loan application to Frankel Financial, which in turn forwarded them to Beneficial Bank.

12. The $12.375 million dollar loan request was in two parts. The first part of the loan process was a $2.4 million loan to purchase the Wilson Building. Dysart was required to put up an additional $800,000 in collateral in order for Beneficial to agree to the loan. The second part of the loan—an additional $9.975 million—was to be used to renovate the property. This portion of the loan was to be taken as draws as renovations progressed. Also, payments would be predicated on leases being obtained.

13. On April 22, 2008, TRIMIS forwarded TRIMIS and PHILIPPOPOULOS' purported resumes by interstate fax from Dysart in New York, New York to Frankel Financial in Fort Washington, Pennsylvania. Frankel Financial then forwarded the resumes and numerous other documents supplied to them by TRIMIS to Beneficial in support of the loan application, including 2006 tax returns and financial statements for borrower Dysart and personal guarantor PHILIPPOPOULOS. Through the investigation, your affiant has determined that the following documents were false, fraudulent, misleading or differ significantly from documents provided to other lenders:

(i) ANGELICA PHILIPPOPOULOS' resume stated that she had graduated in 1995 from Harvard University with a bachelor's degree in Architecture. She also claimed to have a masters degree in business administration from Columbia University. During a May 3, 2013 deposition in connection with the civil litigation involving the Beneficial Bank loan, however, PHILIPPOPOULOS testified that she had only received an associate degree in 1984 from Katherine Gibbs, a college in Norwalk, Connecticut.

(ii) PHILIPPOPOULOS represented in her resume that she had been the President of Dysart since 1997, and stated that she was responsible for organizing and overseeing all company operations, establishing and reviewing company policies, and developing and

maintaining professional business relationships. Although PHILIPPOPOULOS claimed to be the president of Dysart, however, she had nothing to do with the operation of the business at any time relevant to the loan from Beneficial Bank. During her May 3, 2013 deposition, PHILIPPOPOULOS testified that: (1) she was unemployed since 2007; (2) TRIMIS had paid all her bills since she became unemployed; and (3) she had never been in business with GEORGE TRIMIS. Also, when asked to list current and former employment, she did not include Dysart in her response.

    (iii) During the loan application process, Frankel Financial received a purported 2006 tax return for Dysart which it then forwarded to Beneficial Bank. The return submitted to the bank stated that gross sales reported were $14,376,111 and the taxable income reported was $2,561,776. This return differed significantly from the 2006 Dysart return TRIMIS submitted to Interstate Net Bank (Interstate) in connection with a delinquent $500,000 line of credit. The return submitted to Interstate reflected gross sales of only $1,403,952 and taxable income of negative $1,286,881. Interstate wrote off $495,000 of Dysart's $500,000 line of credit in July 2007.

    (iv) TRIMIS also caused PHILIPPOPOULOS' purported 2006 tax return to be provided to Beneficial Bank. This return reported wages of $625,000 and taxable income of $1,336,515. The reported wages differ from other information uncovered in the investigation, including the 2006 Dysart tax return provided to Interstate, which listed compensation to officers as $0 and the salaries and wages as $31,620. Also, PHILIPPOPOULOS' deposition testimony regarding her employment did not reveal any source of income which could account for wages or taxable income in the amounts listed on the return provided to Beneficial.

*The Loan*

14.     Based on a review of documents provided by Beneficial Bank and deposition testimony from civil litigation involving this loan, your affiant has determined that loan officers Stephanie Digan and Andrew Miller recommended the loan for approval by the senior loan committee. In particular, Digan and Miller noted that (1) PHILIPPOPOULOS, the loan guarantor, had a liquid net worth of more than $20 million; (2) Dysart Ventures had a $6.2 million net worth, a strong management team and was making a substantial equity contribution; and (3) safeguards in the loan requiring the borrowers to provide additional liquid collateral.

15.     On May 9, 2008, the board unanimously approved the loan. The meeting minutes reflect that "the borrower was injecting 31% of acquisition cost, the guarantor was quite strong with $21 [million] in liquid assets, the bank was also getting [$750,000] as side collateral in the form of pledged marketable securities until the project gets to a "1 to 1" debt service coverage and that no construction could begin within executed leases in hand. If the developer wants to start construction prior to leases being in place, the borrower must put dollar for dollar away at [Beneficial Bank] as liquid collateral."

16.     On May 20, 2008, TRIMIS faxed Frankel Financial a commitment letter signed by PHILIPPOPOULOS. This document changed the name of the borrower from Dysart to Wilson Development. Dysart's new role with regard to the Wilson Building was to manage construction and renovations and to handle day to day operations. Dysart was also responsible for obtaining tenants for the building.

17.     The loan closed on September 18, 2008. Wilson acquired the Wilson Building for $3.5 million.

18.    On September 29, 2008, PHILIPPOPOULOS received a wire transfer of $750,000 from Spaulding International SA which she used to satisfy the Bank's requirement for additional liquid collateral for the loan.

*Draws on the Loan for Construction and Renovation*

19.    Under the terms of the loan, after the initial purchase of the building, in order to access the $9.975 million portion of the loan reserved for construction and renovations, the borrowers needed to continue to supply financial documents as well as proof that leases for the building were in place. In order to receive additional draws on the loan, PHILIPPOPOULOS and TRIMIS made false statements to Beneficial, and also provided fraudulent documents and documents that differed significantly from others uncovered during the investigation, including the following:

(i)    On December 18, 2009, TRIMIS caused purported 2007 and 2008 tax returns for PHILIPPOPOULOS to be sent to Beneficial. The purported 2007 PHILIPPOPOULOS return stated that her wages were $700,000 and that the taxable income reported was $1,312,517. The purported 2008 PHILIPPOPOULOS return stated that her wages were $750,000 and the taxable income reported was $1,380,290. As stated previously, however, PHILIPPOPOULOS testified in her deposition that she was unemployed in 2007 and 2008.

(ii)   On December 18, 2009, TRIMIS sent an email from Dysart in New York, New York to Stephanie Digan of Beneficial Bank in Philadelphia, Pennsylvania, in which he included the purported 2007 and 2008 tax returns for Dysart that she had requested. The purported 2007 Dysart tax return reported gross sales of $18,688,944, and taxable income of $3,303,010. Although this return appears to be prepared by Brito & Brito, the tax preparation firm hired by TRIMIS to prepare Dysart's tax return, it differs significantly from the 2007 Dysart

return produced by Brito and Brito pursuant to a grand jury subpoena. The Dysart return produced by Brito & Brito states that Dysart's gross sales were $1,629,012 and that the company's taxable income was $7,930. Similarly, the purported 2008 Dysart tax return that TRIMIS provided to Beneficial showed gross sales of $29,782,541 and taxable income of $6,426,399, but the 2008 Dysart return produced by Brito and Brito states that Dysart's gross sales were $390,333 and that the company had a loss of $1,399,509.

    (iii) On or about January 7, 2011, by email and Federal Express from Camden, New Jersey to Beneficial Bank in Philadelphia, Pennsylvania, TRIMIS provided Beneficial with PHILIPPOPOULOS' financial statement, which indicated that she had a net worth of $41,965,760, knowing that she was unemployed, had minimal assets, and that he was providing her financial support.

    (iv) On or about January 7, 2011, in the same email and Federal Express package, TRIMIS provided Beneficial with purported brokerage and bank statements which were for accounts controlled by PHILIPPOPOULOS. Among these statements was a Fidelity Investments statement dated September 30, 2010 which stated that the balance in PHILIPPOPOULOS' account was $10,903,892.91, and a Wachovia Bank statement dated October 9, 2010 that reflected that PHILIPPOPOULOS had a balance at that bank of $9,351,498. Records obtained during the investigation, however, reveal that the true balances in those accounts was actually much lower—the Fidelity account had a $77.01 balance and the Wachovia account balance was less than $1,000.

    (v) During the course of the loan, TRIMIS had supplied several signed and unsigned leases, which gave the appearance that the building had leases in place, and also had other tenants who were likely to lease. Through interviews of persons associated with the

businesses and institutions who had purportedly agreed to rent space in the building, your affiant learned that TRIMIS failed to notify the bank that several of the potential tenants had, in the case of unsigned leases, told TRIMIS that they would not be moving into the building, and in the case of one signed lease, that the lease was contingent on the tenant receiving funding from the government which had not materialized. From interviews with attorneys for Beneficial Bank, your affiant has learned that none of these potential tenants actually leased space in the building. As of July 2012 the only tenants in the 12 story Wilson building were an ATM machine on the first floor and three cellular power towers on the roof.

*Diverted Loan Proceeds*

20. During the course of the loan, Beneficial Bank wired to a Dysart account at TD Bank draws from the second portion of the loan. Pursuant to the terms of the loan, these funds which were to be used for renovation expenses for the Wilson Building. Documents examined during the investigation demonstrate that a portion of the loan proceeds which were intended for renovations and construction of the Wilson Building were not used for that purpose, but rather were diverted to PHILIPPOPOULOS, TRIMIS and companies under their control. Diverted funds include the following:

(i) On November 2, 2010, Dysart wired $800,000 from the account at TD Bank to a TD Ameritrade account in PHILIPPOPOULOS' name. The proceeds were withdrawn from PHILIPPOPOULOS' account and used to purchase $799,792.82 of General Maritime Corp. (ticker symbol GMR) stock.

(ii) On November 17, 2010, Dysart wired $1 million from a Dysart TD Bank account to a TD Ameritrade account in PHILIPPOPOULOS' name. The proceeds were used to purchase $999,933.73 of GMR stock.

(iii) On July 29, 2011, Savoy Enterprises Inc., a company registered to PHILIPPOPOULOS, purchased a property located at 200 E. 61st Street, 23B, New York, NY 10065 for $940,000. At this time PHILIPPOPOULOS had no employment, and no known assets of sufficient value to make this purchase.

*Foreclosure*

21. The Wilson Building loan matured on March 18, 2011. At that time, Beneficial Bank filed a notice of default, as there was an unpaid balance of approximately $10,717,000. Although Beneficial Bank now has control of the property, it has not yet been sold.

22. Based on the facts stated above, your affiant submits that there is probable cause to arrest ANGELICA PHILIPPOPOULOS and GEORGE TRIMIS for violations of 18 U.S.C. §§ 371 (conspiracy), 1014 (false statement in a loan application), 1343 (wire fraud), 1344 (bank fraud) and 371 (conspiracy to commit money laundering).

_____
Special Agent Jennifer Ngo
Federal Bureau of Investigation

Signed and sworn before me this 12th day of December, 2013:

_____
HONORABLE HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE