UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                              Criminal No. 14-632-1

vs.

GEORGE TRIMIS

### SENTENCING MEMORANDUM ON BEHALF OF GEORGE TRIMIS

Through counsel, George Trimis files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a). Mr. Trimis plead guilty to Counts One and Five of the Indictment, Count One charging him with Bank Fraud in violation of 18 U.S.C. § 1344, and Count Five charging him with Money Laundering in violation of 18 U.S.C. § 1956(h). The allegations arose out of his participation in a scheme to defraud Beneficial Bank from April 2008 until April 2011.

Mr. Trimis has accepted responsibility for his actions and is requesting the Court to consider his lack of criminal history and his commitment to being productive member of society and to impose a sentence that includes a prolonged term of probation in lieu of incarceration. This will provide the Government the ability to supervise Mr. Trimis, while also providing Mr. Trimis the best opportunity to pay restitution to the victim. A term of probation would be sufficient, but not greater than necessary, to effectuate the purposes set forth in 18 U.S.C. § 3553(a).

### BACKGROUND FACTS

Mr. Trimis pleaded guilty to one count of Bank Fraud and one count of Money Laundering, resulting from a failed business venture in which Mr. Trimis was attempting to revitalize Camden, New Jersey. The venture centered around the Wilson Building in Camden, New Jersey, which was the tallest building in the city when it was built in 1926, and had been

1

vacant for an extended period of time. Mr. Trimis planned to revitalize the building in hopes of attracting businesses as tenants, reducing crime, and providing jobs for the residents of Camden and the surrounding areas. As part of this plan, Mr. Trimis had agreed to provide, free of rent, the second floor of the building to the City of Camden Police Department (now known as the Camden County Police). Additionally, as part of his endeavors, nearly all contractors and laborers who worked on the project were local residents. Mr. Trimis believed that providing an income to the local residents would reduce the amount of people who resorted to crime as a means for income and would clearly benefit the community.

Mr. Trimis had also placed a deposit on a second building near the Wilson Building. His plan was to begin rehabilitation work on the second property once the Wilson Building had enough occupancy to support the project. This would have provided continuous work for all of the contractors and laborers in the area, plus would have attracted more businesses to the area.

Mr. Trimis sought financing for the project from Beneficial Bank. This was during a time when lending regulations were not as stringent as they are today, and banks were not as diligent when screening potential borrowers.

Despite Mr. Trimis's illegal actions, which he has taken responsibility for, Mr. Trimis's intentions regarding the Wilson Building were legitimate. Mr. Trimis worked tirelessly to renovate the building in order to attract clients. Mr. Trimis was able to obtain a Certificate of Occupancy for the building and attempted to rent space. Unfortunately, due to the overall economic climate at the time, Mr. Trimis was unable to find any tenants willing to rent from him. The only tenants Mr. Trimis was able to secure were an ATM machine and a cell tower.

Mr. Trimis eventually ran low on funds and was not provided additional installments from Beneficial Bank due to not having signed leases. The losses incurred by Beneficial Bank from this failed real estate project resulted in these charges.

## ARGUMENT

The Court is required to compute the Guideline Sentencing Range ("GSR") as a "starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 596 (2007). However, the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court "may not presume that the Guidelines range is reasonable" and must "make an individualized assessment based on the facts presented. *Id.* at 50, 128 S. Ct. at 596-97. Indeed, "the Guidelines are only one of the factors to consider . . . and 3553(a) directs the judge to consider sentences other than imprisonment." *Id.* at 59, 128 S. Ct. at 602. The Supreme Court later emphasized again that the "Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352, 129 S.Ct. 890, 892 (2009). Thus, district courts are now permitted to consider whether the Sentencing Commission's underlying policies, and/or their application to the facts of a particular case, result in a sentence that is unreasonably high. *See United States v. Kimbrough*, 552 U.S. 85, 110, 128 S.Ct. 558, 575 (2007).

A term of probation would be sufficient, but not greater than necessary, to effectuate the purposes set forth in 18 U.S.C. § 3553(a)(2), which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The proposed sentence of a prolonged period of probation represents a substantial penalty that adequately reflects the seriousness of the offense of conviction, will promote respect for the law, and provide just punishment as required by § 3553(a)(2)(A). Despite a sentence of probation not qualitatively being as severe as incarceration, the Supreme Court has recognized that terms of probation amount to a "substantial restriction on freedom." *Gall*, 552 U.S. at 595, 128 S. Ct. at 48. During any period of probation, Mr. Trimis would not be able to leave the judicial district, change jobs, or move to a new home without first obtaining permission to do so. Additionally, he would have to report to probation regularly and allow inspections of his home. These all represent limitations on Mr. Trimis's freedom.

The crimes that Mr. Trimis has pleaded guilty to were nonviolent and were not intended to injure. Despite his actions being violations of law, they are mitigated when put in the perspective of the intentions of Mr. Trimis and the overall banking climate at the time. Consequently, a term of probation is a just punishment under these circumstances that would reflect the seriousness of the offense, and promote respect for the law.

Mr. Trimis's actions occurred during a time when the entire banking industry was lending money to applicants that should have never been approved. This was not a ponzi scheme or stock fraud aimed at stealing money or profiting directly from his wrongdoings; instead, Mr. Trimis was hoping to be a part of the revitalization and gentrification of Camden. The Wilson Building, a historic landmark, had been empty and Mr. Trimis was hoping to restore its relevance. In doing so, Mr. Trimis was hoping he would be able to attract businesses to be tenants in his newly renovated building and provide jobs to the local residents. Had Mr. Trimis been successful in his venture, his efforts would have benefitted Camden and the surrounding areas.

4

It is important to note that Mr. Trimis had in fact invested the money provided by Beneficial Bank into the Wilson Building. Also, as previously submitted and unrefuted, money was invested by Mr. Trimis to initially purchase the building and begin demolition. Then, when he was not provided with additional installments by Beneficial Bank, Mr. Trimis used his own money in order to continue to pay the contractors and laborers working at the site. In the end, Mr. Trimis's efforts resulted in Certification of Occupancy being issued, but he was unable to secure tenants in order to support his venture. Unfortunately, the financial crisis occurred and the economic climate was for businesses to shrink their workforces and not take on additional expenses.

The failed project has certainly been devastating to Mr. Trimis's business goals. All of his subsequent projects were halted, and Mr. Trimis may never be able to obtain financing for a real estate project again.

Since the time of his failed venture, Mr. Trimis has been employed in the New York City real estate industry, but in a much smaller capacity. He was able to obtain employment due to his established reputation as a man of integrity within the real estate community. Additionally, he has been a model candidate for Pre Trial Services. During this time, he has been limited in his freedom and directed to only leave his home for work. He was initially required to wear an ankle monitor, but his restrictions have been eased as he showed a willingness to comply with the established rules and parameters. He has been an exemplary candidate for Pre-Trial Services, which shows his willingness to follow any conditions that would be placed on his if sentenced to a term of probation.

To reiterate, none of this makes Mr. Trimis less culpable or diminishes his offense. However, based on this information, it is evident that Mr. Trimis never intended to steal the

5

money from Beneficial Bank or personally benefit from his wrongdoings. He is a man of integrity who had a vision to make Camden a better place. He is a father to a son, an Honorably Discharged veteran of the Greek Army, who sought to make one of the most crime ridden cities a better place. Accordingly, a term of probation is a just punishment under these circumstances.

§ 3553(a)(2)(A) requires the Court to take into account the seriousness of the offense. The crimes Mr. Trimis has pleaded guilty to are undoubtedly violations of statute, but must be looked at in the totality of one's intent. Also, the actual actions of Mr. Trimis are overstated by the Sentencing Guidelines. For instance, USSG § 2B1.1 increases a defendant's offense level based on the loss amount. This increase artificially amplifies the seriousness of the offense based solely on the loss amount, but fails to consider other relevant factors, such as the impact on the victim. For instance, causing a smaller loss would be considered less harsh, despite possibly having a devastating effect on the victim, while conversely, a larger loss upon a victim with significant resources is considered more serious. Mr. Trimis pleaded guilty to the aforementioned violations of the criminal law, however, the Sentencing Guidelines cause for the seriousness of these violations to be overstated.

In addition, a term of probation would promote respect for the law and would certainly provide just punishment, as required by §§ 3553(a)(2)(B) and (C). As stated earlier, a term of probation would result in substantial restrictions on Mr. Trimis, which serve as punishment and also promote respect for the law. In addition, it is inevitable that Mr. Trimis will be ordered to pay restitution in this case. As a result, during a period of probation, a portion of Mr. Trimis's income would need to go towards the restitution. Another consideration regarding restitution is that any period of incarceration would only delay Mr. Trimis's ability to pay restitution. Also, Mr. Trimis is currently employed. If he were sentenced to a term of imprisonment, he would

undoubtedly lose his job, and his future ability to obtain gainful employment would certainly be limited.

A period of probation would also serve to provide the deterrent effect promulgated by §§ 3553(a)(2)(B) and (C). As previously stated, the Supreme Court has recognized that probation places "substantial restriction[s] on freedom." *Gall*, 552 U.S. at 595, 128 S. Ct. at 48. The restrictions typically placed upon a probationer, along with any others this Court deems necessary, will certainly negatively impact Mr. Trimis's life. As a result, a prolonged period of supervision would certainly have a deterrent effect on Mr. Trimis.

In this case, a prolonged period of probation would also address § 3553(a)(7), which requires the Court to consider the need to provide restitution to the victim. As already stated, a term of probation puts Mr. Trimis in the best position to repay the victim. A period of incarceration would delay any attempts of Mr. Trimis to pay restitution, and upon his release, he would have a gap in employment history which would negatively impact his ability to find employment. Additionally, a term of probation would provide the Government with a mechanism of control and oversight over Mr. Trimis in order to ensure that efforts towards restitution are made. Accordingly, a term of probation would put Mr. Trimis in the best position to repay his victim.

Despite the offense of the Mr. Trimis's actions, they are mitigated when placed in perspective with the intent of Mr. Trimis at the time. Additionally, when the factors set for in § 3553 are applied to Mr. Trimis, it is clear that a term of imprisonment would "result in a sentence that is unreasonably high." *See United States v. Kimbrough*, 552 at 110, 128 S.Ct. at 575. Therefore, a term of probation is fair and just sentence for Mr. Trimis.

7

Mr. Trimis also asks the Court to take into consideration certain health concerns that have arose since his arrest. Over the last two years, Mr. Trimis has been to the emergency room four times for various reasons, including heart concerns. He has also been diagnosed with Post-Traumatic Stress Disorder and is under a doctor's care for this (See attached report). In addition, since his arrest, Mr. Trimis required surgery to his prostate in June of 2015 and has been recently diagnosed as borderline diabetic. Due to his current concerns, a period of probation would allow him to continue his treatment.

### THE GOVERNMENT IS SEEKING A DOWNWARD DEPARTURE PURSUANT TO § 5K1.1

Pursuant to § 5K1.1, the Government has filed a motion under seal requesting the Court grant Mr. Trimis a Downward Departure. Mr. Trimis requests that the Court consider the factors and arguments made by the Government, and grant a Downward Departure in this matter. We intend, with the Court's permission, to supplement with our amplification of the factors.

### CONCLUSION

For the foregoing reasons and those that may be submitted prior to sentencing, Mr. Trimis respectfully submits that a sentence to a prolonged period of probation is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

Respectfully Submitted,

THE ANTHONY POPE LAW FIRM, P.C.

BY: ANTHONY POPE, ESQ.

Dated: February 7, 2017

8